**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| CANADA GOOSE INC., | |
|       Plaintiff, | Case No. 22-cv-06851 |
| v. | |
| THE PARTNERSHIPS and UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A," | |
|       Defendants. | |

## COMPLAINT

Plaintiff Canada Goose Inc. ("Canada Goose" or "Plaintiff") hereby brings the present action against the Partnerships and Unincorporated Associations identified on Schedule A attached hereto (collectively, "Defendants") and alleges as follows:

### I.  JURISDICTION AND VENUE

1.     This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, *et seq.*, 28 U.S.C. § 1338(a)-(b) and 28 U.S.C. § 1331.

2.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants since each of the Defendants directly targets business activities toward consumers in the United States, including Illinois, through at least the fully interactive e-commerce stores[1] operating under the seller aliases identified in Schedule A attached hereto (the "Seller Aliases").  Specifically, Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States

---

[1] The e-commerce store urls are listed on Schedule A hereto under the Online Marketplaces.

consumers using one or more Seller Aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars and, on information and belief, have sold products using infringing and counterfeit versions of Canada Goose's federally registered trademarks to residents of Illinois. Each of the Defendants is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Canada Goose substantial injury in the State of Illinois.

## II. INTRODUCTION

3. This action has been filed by Canada Goose to combat e-commerce store operators who trade upon Canada Goose's reputation and goodwill by selling and/or offering for sale unauthorized and unlicensed products, including outerwear, using infringing and counterfeit versions of Canada Goose's federally registered trademarks (the "Counterfeit Canada Goose Products"). Defendants create e-commerce stores operating under one or more Seller Aliases that are advertising, offering for sale and selling Counterfeit Canada Goose Products to unknowing consumers. E-commerce stores operating under the Seller Aliases share unique identifiers, establishing a logical relationship between them and that Defendants' counterfeiting operation arises out of the same transaction, occurrence, or series of transactions or occurrences. Defendants attempt to avoid and mitigate liability by operating under one or more Seller Aliases to conceal both their identities and the full scope and interworking of their counterfeiting operation. Canada Goose is forced to file this action to combat Defendants' counterfeiting of its registered trademarks, as well as to protect unknowing consumers from purchasing Counterfeit Canada Goose Products over the Internet. Canada Goose has been and continues to be irreparably damaged through consumer confusion, dilution, and tarnishment of its valuable trademarks as a result of Defendants' actions and seeks injunctive and monetary relief.

### III.  THE PARTIES

**Plaintiff**

4.      Founded in a small warehouse in Toronto, Canada, Canada Goose has grown to be an internationally recognized manufacturer, distributor and retailer of high quality, functional outerwear, including parkas, jackets, and coats and associated accessories for men, women and children, all of which prominently display its famous, internationally-recognized and federally-registered trademarks, including CANADA GOOSE (collectively, the "Canada Goose Products"). Canada Goose Products have become enormously popular and even iconic, driven by Canada Goose's arduous quality standards and innovative design. Among the purchasing public, genuine Canada Goose Products are instantly recognizable as such. In the United States and around the world, the Canada Goose brand has come to symbolize high quality, and Canada Goose Products are among the most recognizable outerwear in the world.

5.      Canada Goose Products are distributed and sold to consumers through its flagship stores and retailers throughout the United States, including through authorized retailers in Illinois such as Bloomingdales, Nordstrom, Neiman Marcus, and Saks Fifth Avenue, and also through authorized online retailers in the United States including, but not limited to, Nordstrom, Backcountry.com, Shopbop, and East Dane. Additionally, Canada Goose has a flagship store in Chicago located at 800 North Michigan Avenue in the heart of Chicago's Magnificent Mile shopping district, a store in Boston located at 800 Boylston Street, a store in Soho New York located at SoHo 101 Wooster Street and finally a store in Short Hills New Jersey located at 1200 Morris Turnpike.

6.      Canada Goose incorporates a variety of distinctive marks in the design of its various Canada Goose Products. As a result of its long-standing use, Canada Goose owns

common law trademark rights in its CANADA GOOSE Trademarks. Canada Goose has also registered its trademarks with the United States Patent and Trademark Office. Canada Goose Products typically include at least one of Canada Goose's registered trademarks. Often several Canada Goose marks are displayed on a single product. Canada Goose uses its trademarks in connection with the marketing of its Canada Goose Products, including the following marks which are collectively referred to as the "CANADA GOOSE Trademarks."

| REGISTRATION NUMBER | REGISTERED TRADEMARK | REGISTRATION DATE | INTERNATIONAL CLASSES |
|---|---|---|---|
| 3,254,771 |  | June 26, 2007 | For: Clothing, namely parkas, coats, jackets, pullovers, vests, sweaters, shirts, anoraks, and headwear, substantially made of goose down, where applicable in class 025. |
| 4,455,111 | CANADA GOOSE | December 24, 2013 | For: Outerwear, namely, coats, parkas, jackets, vests, pullovers, shirts, headwear, scarves, gloves and mittens, substantially made of goose down, where applicable in class 025. |
| 5,102,866 |  | December 20, 2016 | For: Clothing and outerwear, namely, coats and jackets in class 025. |

7.     The CANADA GOOSE Trademarks have been used exclusively and continuously in the U.S. by Canada Goose, some since at least as early as 1994, and have never been

abandoned. The above U.S. registrations for the CANADA GOOSE Trademarks are valid, subsisting, in full force and effect, and Registration Nos. 3,254,771 and 4,455,111 are incontestable pursuant to 15 U.S.C. § 1065. The registrations for the CANADA GOOSE Trademarks constitute *prima facie* evidence of their validity and of Canada Goose's exclusive right to use the CANADA GOOSE Trademarks pursuant to 15 U.S.C. § 1057(b). True and correct copies of the United States Registration Certificates for the above-listed CANADA GOOSE Trademarks are attached hereto as **Exhibit 1**.

8.    The CANADA GOOSE Trademarks are exclusive to Canada Goose, and are displayed extensively on Canada Goose Products and in Canada Goose's marketing and promotional materials. Canada Goose Products have long been among the most popular outerwear in the world and have been extensively promoted and advertised at great expense. In fact, Canada Goose has expended millions of dollars annually in advertising, promoting and marketing featuring the CANADA GOOSE Trademarks. Canada Goose Products have also been the subject of extensive unsolicited publicity resulting from their high-quality, functional use in extreme weather, and have been featured in luxury upscale magazines such as Travel and Leisure, Town & Country, Vogue, GQ, Esquire and Elle. In fact, Canada Goose is known as the unofficial outerwear of film crews, particularly those filming in extreme conditions, such as the crew that filmed the documentary capturing the journey of a champion musher along the 2013 Iditarod trail. Canada Goose Products have also been featured prominently on screen, including in the 2004 blockbuster "The Day After Tomorrow," "Mr. Popper's Penguins" in 2011, and "Man of Steel" in 2013, which has bolstered Canada Goose's popularity and relationship with the film industry. Because of these and other factors, the Canada Goose name and the CANADA GOOSE Trademarks have become famous throughout the United States.

9.     The CANADA GOOSE Trademarks are distinctive when applied to the Canada Goose Products, signifying to the purchaser that the products come from Canada Goose and are manufactured to Canada Goose's quality standards.  Whether Canada Goose manufactures the products itself or licenses others to do so, Canada Goose has ensured that products bearing its trademarks are manufactured to the highest quality standards.   The CANADA GOOSE Trademarks have achieved tremendous fame and recognition, which has only added to the distinctiveness of the marks.  As such, the goodwill associated with the CANADA GOOSE Trademarks is of incalculable and inestimable value to Canada Goose.

10.     Since at least as early as 1999, Canada Goose has operated a website where it promotes Canada Goose Products at canadagoose.com.  Canada Goose Products are available for online purchase through the official canadagoose.com website in over thirty countries.  The website also lists authorized U.S. retailers of Canada Goose Products.  Online sales of Canada Goose Products represent a significant portion of Canada Goose's business.   The canadagoose.com website features proprietary content, images and designs exclusive to Canada Goose.

11.     Canada Goose has expended substantial time, money, and other resources in developing, advertising and otherwise promoting and protecting the CANADA GOOSE Trademarks.  As a result, products bearing the CANADA GOOSE Trademarks are widely recognized and exclusively associated by consumers, the public, and the trade as being high-quality products sourced from Canada Goose.  Canada Goose is a multi-million-dollar operation, and Canada Goose Products have become among the most popular of their kind in the world.

6

**The Defendants**

12.     Defendants are individuals and business entities of unknown makeup who own and/or operate one or more of the e-commerce stores under at least the Seller Aliases identified on Schedule A and/or other seller aliases not yet known to Canada Goose.  On information and belief, Defendants reside and/or operate in the People's Republic of China or other foreign jurisdictions with lax trademark enforcement systems, or redistribute products from the same or similar sources in those locations.  Defendants have the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b).

13.     On information and belief, Defendants, either individually or jointly, operate one or more e-commerce stores under the Seller Aliases listed in Schedule A attached hereto.  Tactics used by Defendants to conceal their identities and the full scope of their operation make it virtually impossible for Canada Goose to discover Defendants' true identities and the exact interworking of their counterfeit network.  If Defendants provide additional credible information regarding their identities, Canada Goose will take appropriate steps to amend the Complaint.

## IV.   DEFENDANTS' UNLAWFUL CONDUCT

14.     The success of the Canada Goose brand has resulted in significant counterfeiting of the CANADA GOOSE Trademarks.  In recent years, Canada Goose has identified many fully interactive, e-commerce stores offering counterfeit Canada Goose Products on online marketplace platforms such as Amazon, eBay, AliExpress, Alibaba, Wish.com, Walmart, Etsy, and DHgate, including the e-commerce stores operating under the Seller Aliases.  The Seller Aliases target consumers in this Judicial District and throughout the United States.  According to U.S. Customs and Border Protection (CBP), most counterfeit products now come through international mail and express courier services (as opposed to containers) due to increased sales

from offshore online counterfeiters. *The Counterfeit Silk Road: Impact of Counterfeit Consumer Products Smuggled Into the United States*, prepared for The Buy Safe America Coalition by John Dunham & Associates (**Exhibit 2**). The bulk of counterfeit products sent to the United States "come from China and its dependent territories," accounting for over 90.6% of all cargo with intellectual property rights (IPR) violations. *Id.* Of the $1.23 billion in total IPR violations intercepted, $1.12 billion was from China. *Id.* Counterfeit and pirated products account for billions in economic losses, resulting in tens of thousands of lost jobs for legitimate businesses and broader economic losses, including lost tax revenue. *Id.*

15.     Third party service providers like those used by Defendants do not adequately subject new sellers to verification and confirmation of their identities, allowing counterfeiters to "routinely use false or inaccurate names and addresses when registering with these e-commerce platforms." **Exhibit 3**, Daniel C.K. Chow, *Alibaba, Amazon, and Counterfeiting in the Age of the Internet*, 40 Nw. J. Int'l L. & Bus. 157, 186 (2020); *see also* report on "Combating Trafficking in Counterfeit and Pirated Goods" prepared by the U.S. Department of Homeland Security's Office of Strategy, Policy, and Plans (Jan. 24, 2020) attached as **Exhibit 4** and finding that on "at least some e-commerce platforms, little identifying information is necessary for a counterfeiter to begin selling" and recommending that "[s]ignificantly enhanced vetting of third-party sellers" is necessary. Counterfeiters hedge against the risk of being caught and having their websites taken down from an e-commerce platform by preemptively establishing multiple virtual store-fronts. **Exhibit 4** at p. 22. Since platforms generally do not require a seller on a third-party marketplace to identify the underlying business entity, counterfeiters can have many different profiles that can appear unrelated even though they are commonly owned and operated. **Exhibit 4** at p. 39. Further, "E-commerce platforms create bureaucratic or technical hurdles in helping

brand owners to locate or identify sources of counterfeits and counterfeiters." **Exhibit 3** at 186–187.

16.     Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States consumers using one or more Seller Aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars and, on information and belief, have sold Counterfeit Canada Goose Products to residents of Illinois.

17.     Defendants concurrently employ and benefit from substantially similar advertising and marketing strategies.  For example, Defendants facilitate sales by designing e-commerce stores operating under the Seller Aliases so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers.  E-commerce stores operating under the Seller Aliases appear sophisticated and accept payment in U.S. dollars via credit cards, Alipay, Amazon Pay, and/or PayPal.  E-commerce stores operating under the Seller Aliases often include content and images that make it very difficult for consumers to distinguish such stores from an authorized retailer.  Canada Goose has not licensed or authorized Defendants to use any of the CANADA GOOSE Trademarks, and none of the Defendants are authorized retailers of genuine Canada Goose Products.

18.     Many Defendants also deceive unknowing consumers by using the CANADA GOOSE Trademarks without authorization within the content, text, and/or meta tags of their e-commerce stores to attract various search engines crawling the Internet looking for websites relevant to consumer searches for Canada Goose Products.  Other e-commerce stores operating under the Seller Aliases omit using CANADA GOOSE Trademarks in the item title to evade enforcement efforts while using strategic item titles and descriptions that will trigger their listings when consumers are searching for Canada Goose Products.

19.     E-commerce store operators like Defendants commonly engage in fraudulent conduct when registering the Seller Aliases by providing false, misleading, and/or incomplete information to e-commerce platforms to prevent discovery of their true identities and the scope of their e-commerce operation.

20.     E-commerce store operators like Defendants regularly register or acquire new seller aliases for the purpose of offering for sale and selling Counterfeit Canada Goose Products. Such seller alias registration patterns are one of many common tactics used by e-commerce store operators like Defendants to conceal their identities and the full scope and interworking of their counterfeiting operation, and to avoid being shut down.

21.     Even though Defendants operate under multiple fictitious aliases, the e-commerce stores operating under the Seller Aliases often share unique identifiers, such as templates with common design elements that intentionally omit any contact information or other information for identifying Defendants or other seller aliases they operate or use. E-commerce stores operating under the Seller Aliases include other notable common features, such as use of the same registration patterns, accepted payment methods, check-out methods, keywords, advertising tactics, similarities in price and quantities, the same incorrect grammar and misspellings, and/or the use of the same text and images. Additionally, Counterfeit Canada Goose Products for sale by the Seller Aliases bear similar irregularities and indicia of being counterfeit to one another, suggesting that the Counterfeit Canada Goose Products were manufactured by and come from a common source and that Defendants are interrelated.

22.     E-commerce store operators like Defendants are in constant communication with each other and regularly participate in QQ.com chat rooms and through websites such as

sellerdefense.cn, kaidianyo.com and kuajingvs.com regarding tactics for operating multiple accounts, evading detection, pending litigation, and potential new lawsuits.

23.     Counterfeiters such as Defendants typically operate under multiple seller aliases and payment accounts so that they can continue operation in spite of Canada Goose's enforcement. E-commerce store operators like Defendants maintain off-shore bank accounts and regularly move funds from their financial accounts to off-shore accounts outside the jurisdiction of this Court to avoid payment of any monetary judgment awarded to Canada Goose. Indeed, analysis of financial account transaction logs from previous similar cases indicates that off-shore counterfeiters regularly move funds from U.S.-based financial accounts to off-shore accounts outside the jurisdiction of this Court.

24.     Defendants are working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell Counterfeit Canada Goose Products in the same transaction, occurrence, or series of transactions or occurrences. Defendants, without any authorization or license from Canada Goose, have jointly and severally, knowingly and willfully used and continue to use the CANADA GOOSE Trademarks in connection with the advertisement, distribution, offering for sale, and sale of Counterfeit Canada Goose Products into the United States and Illinois over the Internet.

25.     Defendants' unauthorized use of the CANADA GOOSE Trademarks in connection with the advertising, distribution, offering for sale, and sale of Counterfeit Canada Goose Products, including the sale of Counterfeit Canada Goose Products into the United States, including Illinois, is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Canada Goose.

11

**COUNT I**
**TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)**

26.     Canada Goose hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

27.     This is a trademark infringement action against Defendants based on their unauthorized use in commerce of counterfeit imitations of the federally registered CANADA GOOSE Trademarks in connection with the sale, offering for sale, distribution, and/or advertising of infringing goods.   The CANADA GOOSE Trademarks are highly distinctive marks.   Consumers have come to expect the highest quality from Canada Goose Products offered, sold or marketed under the CANADA GOOSE Trademarks.

28.     Defendants have sold, offered to sell, marketed, distributed, and advertised, and are still selling, offering to sell, marketing, distributing, and advertising products using counterfeit reproductions of the CANADA GOOSE Trademarks without Canada Goose's permission.

29.     Canada Goose is the exclusive owner of the CANADA GOOSE Trademarks. Canada Goose's United States Registrations for the CANADA GOOSE Trademarks (Exhibit 1) are in full force and effect.  Upon information and belief, Defendants have knowledge of Canada Goose's rights in the CANADA GOOSE Trademarks, and are willfully infringing and intentionally using counterfeits of the CANADA GOOSE Trademarks.   Defendants' willful, intentional and unauthorized use of the CANADA GOOSE Trademarks is likely to cause and is causing confusion, mistake, and deception as to the origin and quality of the Counterfeit Canada Goose Products among the general public.

30.     Defendants'   activities   constitute   willful   trademark   infringement   and counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

31.     Canada Goose has no adequate remedy at law, and if Defendants' actions are not enjoined, Canada Goose will continue to suffer irreparable harm to its reputation and the goodwill of its well-known CANADA GOOSE Trademarks.

32.     The injuries and damages sustained by Canada Goose have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offering to sell, and sale of Counterfeit Canada Goose Products.

**COUNT II**
**FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))**

33.     Canada Goose hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

34.     Defendants' promotion, marketing, offering for sale, and sale of Counterfeit Canada Goose Products has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with Canada Goose or the origin, sponsorship, or approval of Defendants' Counterfeit Canada Goose Products by Canada Goose.

35.     By using the CANADA GOOSE Trademarks in connection with the Counterfeit Canada Goose Products, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the Counterfeit Canada Goose Products.

36.     Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the Counterfeit Canada Goose Products to the general public involves the use of counterfeit marks and is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

37.     Canada Goose has no adequate remedy at law and, if Defendants' actions are not enjoined, Canada Goose will continue to suffer irreparable harm to its reputation and the associated goodwill of its Canada Goose brand.

**PRAYER FOR RELIEF**

WHEREFORE, Canada Goose prays for judgment against Defendants as follows:

1) That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

   a. using the CANADA GOOSE Trademarks or any reproductions, counterfeit copies or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine Canada Goose Product or is not authorized by Canada Goose to be sold in connection with the CANADA GOOSE Trademarks;

   b. passing off, inducing, or enabling others to sell or pass off any product as a genuine Canada Goose Product or any other product produced by Canada Goose, that is not Canada Goose's or not produced under the authorization, control, or supervision of Canada Goose and approved by Canada Goose for sale under the CANADA GOOSE Trademarks;

   c. committing any acts calculated to cause consumers to believe that Defendants' Counterfeit Canada Goose Products are those sold under the authorization, control or supervision of Canada Goose, or are sponsored by, approved by, or otherwise connected with Canada Goose;

    d.  further infringing the CANADA GOOSE Trademarks and damaging Canada Goose's goodwill; and

    e.  manufacturing, shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Canada Goose, nor authorized by Canada Goose to be sold or offered for sale, and which bear any of Canada Goose's trademarks, including the CANADA GOOSE Trademarks, or any reproductions, counterfeit copies or colorable imitations thereof;

2) Entry of an Order that, upon Canada Goose's request, those with notice of the injunction, including, without limitation, any online marketplace platforms such as eBay, AliExpress, Alibaba, Amazon, Wish.com, Walmart, Etsy, and DHgate (collectively, the "Third Party Providers") shall disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of counterfeit and infringing goods using the CANADA GOOSE Trademarks;

3) That Defendants account for and pay to Canada Goose all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of damages for infringement of the CANADA GOOSE Trademarks be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117;

4) In the alternative, that Canada Goose be awarded statutory damages for willful trademark counterfeiting pursuant to 15 U.S.C. § 1117(c)(2) of $2,000,000 for each and every use of the CANADA GOOSE Trademarks;

5) That Canada Goose be awarded its reasonable attorneys' fees and costs; and

6) Award any and all other relief that this Court deems just and proper.

Dated this 6th day of December 2022.    Respectfully submitted,

/s/ Justin R. Gaudio
Amy Ziegler
Justin R. Gaudio
Rachel S. Miller
Benjamin C.R. Lockyer
Greer, Burns & Crain, Ltd.
300 South Wacker Drive, Suite 2500
Chicago, Illinois 60606
312.360.0080 / 312.360.9315 (facsimile)
aziegler@gbc.law
jgaudio@gbc.law
rmiller@gbc.law
blockyer@gbc.law

*Attorneys for Plaintiff Canada Goose Inc.*